IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

*Plaintiff*,

v.                                                    Civil Action No. ELH-11-cv-3165

$14,800.00 IN U.S. CURRENCY,

*Defendant*.

**MEMORANDUM OPINION**

This case involves a civil *in rem* proceeding to forfeit $14,800 in cash seized by the

Maryland State Police during the search of a vehicle following a traffic stop.  On November 4,

2011, the Government filed a Verified Complaint for Forfeiture ("Complaint") (ECF 1) against

$14,800 in U.S. currency (the "defendant currency"), alleging that the defendant currency is

subject to forfeiture under the Controlled Substances Act ("CSA"), 21 U.S.C. § 881(a)(6).[1]

Pursuant to the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185,

114 Stat. 202 (codified in part at 18 U.S.C. § 983), Calvin Basemore, Jr. and Patrice Basemore

filed a claim asserting ownership of the defendant currency ("Claim") (ECF 10-2).  *See* 18

U.S.C. § 983(a)(2)(A).

On January 10, 2012, the Basemores filed a Motion for Summary Judgment ("MSJ")

(ECF 10), contending that the Government had not established that the defendant currency was

subject to forfeiture.  In a combined submission, the Government moved to strike the Basemores'

claim of ownership or, in the alternative, for leave to depose the Basemores regarding their

claim, and opposed summary judgment.  *See* Motion to Strike (ECF 27).  The Basemores

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1355(a).

opposed the Motion to Strike ("Response") (ECF 28), and the Government has replied ("Reply") (ECF 29).   The Motion for Summary Judgment and the Motion to Strike are now ripe for decision, no hearing being necessary.[2]   *See* Local Rule 105.6.   For the reasons that follow, this Court will deny both motions.

## I.   Factual Background

### A.  *Seizure of the Defendant Currency*

At around 1 a.m. on May 2, 2011, Trooper First Class Robert Quirk ("TFC Quirk") of the Maryland State Police stopped a speeding 2011 Ford Flex, with Virginia registration, travelling northeast on Interstate 95 in Harford County, Maryland.   Declaration of Sergeant Jason Leichtman ¶ a ("Leichtman Decl.") (ECF 1)[3]; Affidavit of Calvin Basemore, Jr. ("Basemore Aff.") ¶ 8 (ECF 10-2).   The vehicle was a rental car from Avis.   Leichtman Decl. ¶ a.   The driver, Mr. Basemore, was the sole occupant of the vehicle.   *See id.*   He stated that he was driving to Elizabeth, New Jersey to pick up his son from his mother-in-law.   *See id.* at ¶ b.   Mr. Basemore denied having any contraband or U.S. currency in the Ford.   *Id.* at ¶ c.   During the stop, TFC Zeller, "an assisting Trooper," noticed that Mr. Basemore was yawning and rubbing his face repeatedly, in a manner that seemed "nervous."   *Id.* at ¶ d.

TFC Quirk conducted a K-9 scan of the vehicle, and the K-9 alerted to the presence of a controlled substance.[4]   *Id.* at ¶ e.   TFC Quirk subsequently searched the vehicle, detected the odor of marijuana in the passenger compartment, and found a backpack on the floor behind the

---

[2]  In support of their Claim, the Basemores submitted tax returns for several years, the latest of which was 2010; two Sallie Mae check stubs from 2010 and 2011; and certain paycheck stubs from 2009 and 2011.   *See* Claim, Exh. B, C (ECF 10-2).   In their Motion for Summary Judgment, the Basemores rely solely on the Claim and its supporting documentation.   *See* MSJ.

[3]  Sergeant Leichtman's Declaration was filed with the Complaint.

[4]  Mr. Basemore alleges that this scan was performed without his consent.   *See* Basemore Aff. ¶ 9.   However, the admissibility of the evidence at trial is not presently at issue in this case.

driver's seat.  *See id.* at ¶¶ f, g.  The backpack contained $14,800.00 in U.S. currency, in stacks of bills held together by rubber bands.  *See id.* at ¶ f.  The K-9 alerted to the presence of a controlled substance on the currency.  *See id.* at ¶ j.

Initially, Mr. Basemore could not specify the amount of money in the backpack, but later stated that it was about $12,000.  *See id.* at ¶ h.  He then said that "he was going to purchase some cars and sell them in Virginia."  *See id.* ¶ i.  Mr. Basemore has since explained that he was driving to Elizabeth, New Jersey to purchase either "two vehicles to sell for profit" or a tractor, which he would use as a commercial truck driver.  *See* Basemore Aff. ¶ 6.  According to Mr. Basemore, he needed to use cash for his purchases because of his poor credit rating.  *Id.* at ¶ 7. Mr. Basemore has two prior felony convictions related to controlled substances.  *See* Leichtman Decl. ¶ k.  Law enforcement could not uncover any record of earnings for Mr. Basemore.  *See id.* at ¶ l.

### B. *Rule G(6) Interrogatories*

After the Basemores filed their Motion for Summary Judgment, the Government served special interrogatories on the Basemores directed to their relationship to the defendant currency, pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  *See* Motion to Compel ¶ 6 (ECF 21-1).  Thereafter, the parties disputed the proper scope of the interrogatories and the sufficiency of the Basemores' responses.  The Government filed a Motion to Compel (ECF 21-1).  It culminated in this Court's Order of June 6, 2012, denying the Government's Motion to Compel as to Interrogatories 2, 4, 7, 8, 11, 12, 14 and 15, but granting the Motion to Compel as to Interrogatories 5, 6 and 13.  *See* Memorandum to Counsel, June 6, 2012 (ECF 24).

Special Interrogatory 5 stated:

> If you have any records, documents, or tangible items which reflect or are relevant to your interest in the Defendant Currency or your claim to the Defendant Currency, please identify each piece of evidence with specificity, including the name, address and telephone number of its custodian. In lieu thereof, you may produce copies of the records, documents, or tangible items.

*See* Government's Motion to Compel at 14.

The Basemores initially responded that, in conjunction with the Claim, they had "provided sufficient documentation evidencing their wages and salary to establish Article III standing." (ECF 22-7). In their Supplemental Responses to the Order of June 6, 2012, the Basemores identified the specific documents – Mr. Basemore's tax returns from 2007 through 2010 and check stubs from Sallie Mae dated July 28, 2010 and January 25, 2011, as well as Ms. Basemore's tax returns from 2005, 2007, 2009, and 2010, paystubs from January 2009 through October 2009, and paystubs from March through May of 2011 – responsive to Interrogatory 5, which allegedly constitute "all documentation currently in their possession." (ECF 25-1). No further documentation has been produced.

> Special Interrogatory 6 stated:
>
> Please list each and every source from which you claim that the Defendant Currency was derived, including the exact amount of money derived from each source. Your answer should also include: the date the currency, or any portion thereof, was obtained; from whom (name, address and telephone number) the currency was obtained and the reason you obtained the currency. If the currency, or any portion thereof, was obtained by you in the form of a check and converted to cash, list the payor and payee of the check(s), the amount thereof, the approximate date the check was written, the date and place where the check was cashed or deposited, and the places where the cash has been kept since the check was converted to cash. If you originally received any portion of the Defendant Currency in some other form besides cash or check, list the form of payment, the amount of the payment, and the reason such payment was made to you or to such other person or organization. Please identify each witness (by name, address and telephone number) and each document (and the name, address and telephone number of the custodian of the document) that supports your answer.

*See* Motion to Compel at 15.

At first, the Basemores responded that they had provided this information in the Claim. (ECF 22-7).  In their Supplemental Response, the Basemores explained that they "save money they received from their employment, money that was gifted to them by family, and tax returns," that they "received income from jobs in the form of checks and direct deposit," that they "often cashed their employment checks to pay bills and save defendant currency," and that they could not recall the amounts derived from each source or the dates and places where the relevant transactions took place.  (ECF 25-1).  No further documentation was produced.

Special Interrogatory 13 stated:

List the names, business addresses, dates of employment, and rates of pay regarding all employers for whom you have worked for the past five (5) years. For each response, include whether payment was made to you by check, cash, direct deposit, etc.  Please state the years that you have filed a tax return, your gross income for each year, and the taxes paid.

*See* Motion to Compel at 20.

The Basemores initially provided some employment information, but did not provide any documentation connecting employment income to the defendant currency.  (ECF 22-7).  The Basemores' supplemental response added that Ms. Basemore had been paid by check, but subsequently began receiving payment through direct deposit.  (ECF 25-1).  Again, no further documentation was produced to the Government.

The Government subsequently asked this Court to determine whether the Basemores' Supplemental Responses complied with this Court's order granting the motion to compel.  *See* Status Report (ECF 25).  This Court declined, but allowed that the Government "may pursue any remedies available under the Federal Rules of Civil Procedure and the Local Rules."  *See* Memorandum to Counsel (ECF 26).   The Government was instructed to submit an affidavit in support of any requests for depositions or further discovery, no later than July 19, 2012.  *Id.*

## II.     The Government's Motion to Strike

A claimant's standing to contest forfeiture is a threshold matter that must be resolved before addressing an asset forfeiture claim.  Supp. R. G(8)(c)(ii)(A) & advisory committee's note ("A claimant who lacks standing is not entitled to challenge the forfeiture on the merits."); *United States v. Munson*, Nos. 08-2065, 08-2159, 08-4326, 2012 WL 1302601, at *4 (4th Cir. Apr. 17, 2012) ("In order to contest a government forfeiture action, a claimant must have the Article III standing required for any action brought in federal court.").   To that end, Supplemental Rule G(6) provides that "the government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property," *i.e.*, to gather information upon which the claimant has asserted standing, "at any time after the claim is filed and before discovery is closed."  Supp. R. G(6) & advisory committee's note.  And, "[a]t any time before trial, the government may move to strike the claimant's claim . . . on the grounds that the claimant has not responded to special interrogatories propounded pursuant to Rule G(6)(a), or that the claimant lacks standing."  *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 635 (9th Cir. 2012) (citing Supp. R. G(8)(c)(i)).

Consistent with this guidance, the Government offers two arguments in support of its Motion to Strike.  First, the Government contends that the Basemores have not met their burden to establish standing to assert a claim to the defendant currency.   Second, the Government contends that the Basemores have not adequately or in good faith responded to the Government's Rule G(6) interrogatories.  I discuss these arguments in turn.

### A.  Claim Standing

The Advisory Committee Notes to Supplemental Rule G provide that claim standing may be addressed in three ways.  First, "[i]f a claim fails on its face to show facts that support claim

standing, the claim can be dismissed by judgment on the pleadings."   Supp. R. G(6)(c)(ii) advisory committee's note.   Second, "[i]f the claim shows facts that would support claim standing, those facts can be tested by a motion for summary judgment" filed by the Government. *Id.*   And third, "[i]f material facts are disputed, precluding a grant of summary judgment, the court may hold an evidentiary hearing," at which a "claimant has the burden to establish claim standing."   *Id.*   A claimant generally bears the burden of establishing standing by a preponderance of the evidence.   Supp. R. G(8)(c)(ii)(B); *see United States v. Real Property Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1191 (9th Cir. 2004).

At the summary judgment stage, a claimant must allege evidence sufficient to establish a "facially colorable interest" in the defendant property.   *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008); *see also United States v. $577,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2003) ("[T]he only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest,' not whether he ultimately proves the existence of that interest." (citation and footnote omitted)).   The requisite interest may be demonstrated through a combination of the claimant's assertion of ownership and actual possession of the defendant property at the time of seizure.   *See, e.g.*, *$148,840.00*, 521 F.3d at 1274-77 (holding that seizure of property from claimant's possession, coupled with ownership claim, was sufficient to establish standing at summary judgment and citing cases); *see also $133,420.00*, 672 F.3d at 638-40 (holding that claimant's conclusory assertion of bare possessory interest and unexplained possession of the defendant property did not establish standing).

At this stage of the proceedings, the Basemores have satisfied their burden.   The Basemores have submitted sworn affidavits asserting their ownership interest in the cash and

explaining Mr. Basemore's possession of the cash at the time it was seized.  Furthermore, Mr. Basemore had possession of the defendant currency when he was pulled over by TFC Quirk, which supplies the additional quantum of evidence needed to survive a motion to strike at the summary judgment stage.  In passing, the Government suggests that Ms. Basemore cannot rely on her husband's possession of the currency at the time of seizure in order to survive a motion to strike her claim to the defendant currency.  *See* Motion to Strike at 7 n.1.  I am not persuaded by this argument.  The notion that the spouse of a claimant could not assert an ownership interest in currency merely because she stayed at home, rather than travelling with her spouse in a car, simply ignores the practical realities of life: joint owners of property are not required to be together at all times.

The Government suggests that for a claim involving cash, courts have held that the claimant must also provide evidence that the asserted interest was lawful.  *See $133,420.00*, 672 F.3d at 639.  In other words, "'[u]nexplained naked possession of a cash hoard . . . does not rise to the level of possessory interest requisite for standing to attack the forfeiture proceeding' at the summary judgment stage."  *Id.* (quoting *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 983 (9th Cir. 2002)).  However, I am satisfied that the Basemores have met their burden in this regard as well, based on the affidavits submitted here and documents and records submitted in response to the Government's interrogatories, in which the claimants have identified lawful sources of income and explained how the defendant currency was procured.  Particularly because this case involves a sum of money far less than the "hoards" at issue in the cases cited by the Government—sums which, alone, were far more suggestive of unlawful activity, *compare, e.g.*, *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274-75 (10th Cir. 2007) (finding amount of money suggestive of unlawful activity for forfeiture purposes), *with United States v.*

*$5,000 in U.S. Currency*, 40 F.3d 846, 850 (6th Cir. 1994)) (adopting 9th Circuit reasoning that "[f]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity" (quoting *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir. 1994)) (alteration in original))—no additional evidentiary showing is required at this juncture.

### B.   Rule G(6) Interrogatories

Rule G(6) interrogatories serve an essential function in the asset forfeiture context by allowing the Government to test a claimant's bare assertion of standing against an evidentiary basis. *See $133,420.00*, 672 F.3d at 642. Nevertheless, I am not persuaded that the Basemores' claim should be struck on the grounds that they have obstructed the discovery procedures under Supplemental Rule G(6). The Basemores have disclosed tax returns, check stubs, and direct deposit information in connection with the Claim, and provided explanations for their failures to produce the additional documentation sought by the Government. If there is no further documentary evidence that can be produced, it is difficult to see why striking the claim is an appropriate sanction. *See, e.g.*, *id.* at 641-42 (holding that ownership claim was properly struck where claimant invoked the Fifth Amendment "as a sword as well as a shield" to obstruct discovery process regarding the specific nature of his asserted ownership interest).

The Government seems to want a paper trail documenting each transaction underlying the possession of the defendant currency. But, the basis for this request defies common sense. The Basemores have declared that the defendant property was obtained through multiple transactions over several years; they can hardly be expected to recollect or to have documented each transaction. Indeed, as was noted in the Court's Order of June 6, 2012, the Basemore's were instructed to supplement their responses to the Government's interrogatories "to the extent that

they know such information." As the Advisory Committee Notes to Supplemental Rule G indicate, "[n]ot every failure to respond to subdivision (6) interrogatories warrants an order striking the claim."

Additionally, the Government was specifically afforded the opportunity to submit an affidavit in support of any requests for depositions or further discovery, so long as the request was made by July 19, 2012. *See* Memorandum to Counsel, July 11, 2012 (ECF 26). It failed to do so, without explanation. Therefore, solely in connection with the Motion to Strike, I will deny the Government's motion for leave to depose the Basemores.[5]

### III.    The Basemores' Motion for Summary Judgment

Having resolved the Government's Motion to Strike, I will next consider the Motion for Summary Judgment. In their Motion for Summary Judgment, the Basemores contend that the Government has failed to establish that the defendant property is subject to forfeiture. As explained below, I am not persuaded.

#### A.  *Standard of Review*

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

---

[5] The Court expresses no opinion on future discovery.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'" showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. There is a dispute of material fact that precludes summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### B. Discussion

Currency seized by the Government is subject to forfeiture if it was (1) intended to be furnished in exchange for a controlled substance in violation of the CSA, (2) traceable to such an exchange, or (3) used and intended to be used to facilitate a violation of the CSA. 21 U.S.C. § 881(a)(6). In proving that an asset is subject to forfeiture, the Government must, by a preponderance of the evidence, "establish that there was a substantial connection between the property [sought to be forfeited] and the offense." 18 U.S.C. § 983(c)(1), (3); *United States v. Borromeo*, 995 F.2d 23, 25 (4th Cir. 1993) (quoting *United States v. Santoro*, 866 F.2d 1538, 1542 (4th Cir. 1989); *United States v. $95,945.18 in U.S. Currency*, 913 F.2d 1106, 1110 (4th Cir. 1990)).

Several factors can be probative of whether currency is substantially connected to a violation of the CSA: the amount and denomination of the property; the packaging of the currency; the behavior of the individual in possession of the currency, including the individual's explanation for possessing the currency, whether the individual denied possessing the currency,

and whether the individual appeared nervous or changed stories; whether a trained narcotics dog alerted to the currency or the location in which the currency was discovered; and whether the claimant has a lawful source of income. *See, e.g.*, *United States v. $124,700.00 in U.S. Currency*, 458 F.3d 822, 826 (8th Cir. 2006) (finding substantial connection between defendant currency and drug trafficking offense based on quantity of currency, plausibility of claimant's explanation for possessing the currency, inconsistent statements, and concealment of currency in aluminum foil inside a cooler); *United States v. $252,300.00 in U.S. Currency*, 484 F.3d 1271, 1274-75 (10th Cir. 2007) (finding substantial connection based on quantity of currency seized, packaging of currency in plastic bags, inconsistent statements, lack of documentation supporting explanation of possession, and odor of marijuana); *United States v. $107,840.00 in U.S. Currency*, 784 F. Supp. 2d 1109, 1124-30 (S.D. Iowa 2011) (finding substantial connection based on quantity and denomination of currency, packaging and concealment, implausibility of explanation for possessing the currency, lack of legitimate income, and K-9 alert to controlled substance).

When considered in isolation, I agree with the Basemores that some of these factors do not militate in favor of forfeiture, because the evidence does not seem "so 'out of the ordinary' as to be [more than] marginally suggestive" of a nexus with narcotics activity, let alone any criminal activity. *United States v. $10,700.00 in U.S. Currency*, 258 F.3d 215, 227 (3d Cir. 2001). First, the amount of cash seized in this case—$14,800.00—is large, but not an amount so large as to compel, on its face, the conclusion of a connection with unlawful activity. *See United States v. Currency, U.S. $147,900.00*, 450 F. App'x 261, 266 (4th Cir. 2011) (per curiam) (indicating that $9,000.00 "is not an amount that on its own would suggest linkage to drug activity"); *see also $5,000 in U.S. Currency*, 40 F.3d at 850. Second, the manner of packaging at

issue here is equally inconclusive.  The currency was found in stacks of bills, held together by rubber bands, inside of a backpack in the passenger compartment of Mr. Basemore's vehicle—an arguably reasonable way to transport currency.  *See United States v. One Lot of U.S. Currency Totaling $14,665*, 33 F. Supp. 2d 47, 54 (D. Mass. 1998) ("If one is carrying a large sum of cash currency, for whatever reason, using a rubber band to keep it in order is simple and effective.").  Moreover, the currency was not secreted in a manner as would suggest an illicit purpose.  *See, e.g.*, *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501-02 (8th Cir. 2004) (finding substantial connection where currency was packed in vacuum-sealed bags to hamper canine detection); *United States v. $50,720.00 in U.S. Currency*, 589 F. Supp. 2d 582, 583-84 (E.D.N.C. 2008) (finding substantial connection in part because currency was hidden in false bottom of suitcase).  Nor was Mr. Basemore's fatigue and alleged nervousness when stopped by TFC Quirk indicative of any unlawful activity.  It is hardly outside the realm of possibility that a driver will be yawning and rubbing his face if stopped on the road at one o'clock in the morning.  *Cf. $10,700.00*, 258 F.3d at 226 (finding "claimants' apparent nervousness is of minimal probative value, given that many, if not most, individuals can become nervous or anxious when detained by police officers.").

Nevertheless, "in determining whether the Government has met its burden, courts should not view each piece of evidence in isolation, but rather 'consider the totality of the evidence as a whole and in the appropriate context.'"  *$147,900.00*, 450 F. App'x at 264 (citation omitted); *see, e.g.*, *$107,840.00*, 784 F. Supp. 2d at 1129-30 (evaluating totality of the evidence).  And, several other factors are strongly suggestive of a connection with a violation of the CSA.  Critically, Sergeant Leichtman stated in his affidavit that a K-9 alerted to the presence of controlled substances during scans of the vehicle and the backpack.  *See, e.g.*, *$84,615*, 379 F.3d

at 501-02 (finding canine alert suggested connection to narcotics).   Furthermore, TFC Quirk detected the odor of marijuana emanating from the vehicle.

In addition, Mr. Basemore was allegedly evasive and inconsistent in his answers to Sergeant Leichtman's questions.   Initially, Mr. Basemore told the Sergeant that he was travelling to New Jersey to retrieve his son and bring him back to Virginia, and denied having any large sums of currency.   After the currency was discovered, however, he changed his story, explaining instead that he was travelling either to purchase two cars to sell in Virginia, or to purchase a truck for his construction business.   Cases are legion in which similar failures to consistently explain possession of the defendant currency indicated a connection to narcotics trafficking when combined with K-9 alerts and other evidence.[6]   *See, e.g.*, *$50,720.00*, 589 F. Supp. 2d at 584 (finding denial of possessing currency "one of many false, conflicting, and implausible statements" made by claimant, supported substantial connection to narcotics).

Moreover, the Basemores have provided no details supporting these stories, such as the location of the vehicles they intended to purchase or the name or contact information of the sellers.   *See, e.g.*, *$124,700*, 458 F.3d at 826 ("[Claimant] purportedly carried $125,000 in cash with him on his flight, for the purposes of buying a truck that he had never seen, from a third party he had never met, with the help of a friend whose name he could not recall . . . .").   And, in the absence of such obvious and easily available evidence, granting the motion for summary judgment would obligate me to judge the credibility of Mr. and Ms. Basemore, which is not appropriate on a motion for summary judgment.

## Conclusion

---

[6] I note that the Basemores dispute the Government's factual allegation that TFC Quirk asked Mr. Basemore whether he had "any" U.S. currency in the vehicle, and claim instead that TFC Quirk only asked whether Mr. Basemore had a "large amount" of currency in the vehicle. *See* Response at 10 & n.1.   Whether Mr. Basemore was truly evasive in his answers, in the factual context of this case, is therefore a disputed material fact precluding summary judgment.

For the foregoing reasons, this Court will deny the Government's Motion to Strike and deny the Basemores' Motion for Summary Judgment.  A separate Order, consistent with this Opinion, follows.


Date: September 28, 2012                              _____/s/_____
                                                     Ellen Lipton Hollander
                                                     United States District Judge